IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| GLENDORA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE  No. 05-CV-0488-EJL |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| STEPHEN G. TOMANN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPORT

On November 28, 2005, Plaintiff Glendora ("Glendora") filed her voluminous Complaint *pro se* ("Complaint") against various defendants, including New York State, various judges, as well as other public and private defendants (collectively "Defendants").  Currently pending before the Court are the following motions: (1) Motion for Summary Judgment (Docket No. 4), filed on January 4, 2006 by Stephen G. Tomann; (2) Motion and Affirmation in Support for $23,000 Sanctions (Docket No. 6), filed on January 12, 2006 by Glendora ; (3) Motion and Affirmation in Support for Default Judgment in Her Favor Pursuant to FRCP Rule 55 Upon All Defendants  Excepting Tomann, Sotomayor, Raggi, and Hall (Docket No. 10), filed on January 27, 2006 by Glendora; (4) Omnibus Memoranda by Glendora Together with Motion for

**Report and Recommendation - Page 1**

Summary Default Judgment (Docket No. 13), filed on February 2, 2006 by Glendora; (5) Cross-Motion to Dismiss (Docket No. 17), filed on February 21, 2006 by Rivkin Radler LLP and William Savino; (6) Cross-Motion to Dismiss (Docket No. 19), filed on February 21, 2006 by Alyssa Amato, Yenyfer Olaya, Dianne Bennett, Robert M. Callagy, Satterlee Stephens, Burke & Burke, Kristine Savarino, and Cecelia Mastrorilli; (7) Motion for Sanctions filed on March 7, 2006 by Glendora (Docket No. 24) (8) Federal Defendants' Motion to Dimiss (Docket No. 26), filed on March 20, 2006;(9) Motion to Deny Motions to Dismiss and to Grant All the Relief in Her Complaint and to Award Her Judgment by Default against All Defendants (Docket No. 32), filed on April 10, 2006; and (10) Cross-Motion to Dismiss (Docket No. 37), filed on May 5, 2005 by Debra Ecock.

# I.
## Background

Glendora produces and hosts a public-access program entitled "A Chat With Glendora," which is broadcast on cable television in the Westchester, New York area.  For at least the past ten years, Glendora has filed a multitude of cases *pro se* in federal and state court.  Glendora began her apparent hobby as a *pro se* litigant in the New York courts[1] but has since expanded her filings to courts around the country, including Maine, Pennsylvania, New Mexico, Oregon, and now Idaho.[2]

---

[1] *See e.g.*, *Glendora v. Lemle*, 2001 WL 984926 (E.D.N.Y. 2001); *Glendora v. City of White Plains*, 53 F.Supp.2d 621 (S.D.N.Y. 1999); *Glendora v. Bruiser Ken*, 1999 WL 390642 (E.D.N.Y. 1999); *Glendora v. Pinkerton Sec. and Detective Servs.*, 25 F.Supp.2d 447 (S.D.N.Y. 1998); *Glendora v. Tele-Communications, Inc.*, 1996 WL 721077 (S.D.N.Y. 1996); *Glendora v. Marshall*, 947 F.Supp. 707 (S.D.N.Y.(1996).  For New York state court, *see, e.g.*, *Glendora v.. Hubbard*, 643 N.Y.S.2d 377 (N.Y. 1996); *Glendora v. Walsh*, 642 N.Y.S.2d 545 (N.Y. 1996); *Glendora v. CBS, Inc.*, 624 N.Y.S.2d 254 (N.Y. 1995)

[2] For other Districts, *see, e.g.*, *Glendora v. Brading*, 2002 WL 31971936 (D.Or. 2002), other Circuits, *see, e.g., Glendora v. Sellers*, 2003 WL 220510 (10th Cir. 2003) (stating that Glendora's case filings, this one in a District with no relation to any claims or parties, "amounted to a pattern of malicious, abusive, and frivolous

Glendora's Complaint in the present action comes in three volumes consisting of a hodge-podge of claims against a slew of defendants – she has sued everyone from judges who adjudicated her past lawsuits to "Jane and John Does together with their abettors, accomplices and accessories who in complicity and common guilt stole from Glendora a blue sky."  In her 209-page Complaint, Glendora intersperses handwritten notes with fragments of documents from other matters.  Also speckled throughout the Complaint are photocopied photographs of Glendora as a young woman pictured with Bob Hope.

Glendora begins Volume One of her Complaint with the "Lead" Defendant, Stephen G. Tomann ("Tomann"), the Town Justice of Philipstown, County of Putman, State of New York. Glendora's claims against Tomann relate to a small claims action she initiated in Philipstown, New York, against fellow Defendant Debra Ecock, who is the local signer for Glendora's public television show.  Glendora alleged Ms. Ecock breached an oral contract.  On June 9, 2005, Tomann, acting as the Town Justice assigned to the matter, issued a decision dismissing Glendora's suit against Ms. Ecock.  After receiving the adverse decision, Glendora has now brought suit against Tomann in the District of Idaho, "appeal[ing] in its entirety the [June 9, 2005] order of Stephen G. Tomann." (Complaint, Volume One, p. 2.)   Glendora's complaints

litigation"); *Glendora v. Anderson*, 2003 WL 202108 (9th Cir. 2003) (affirming lack-of-venue-dismissal of Glendora's action); *Glendora v. Walker*, 2002 WL 31839186 (4th Cir. 2002) (dismissing Glendora's appeal because frivolous); *Glendora v. Levin*, 2001 WL 1587415 (6th Cir. 2001) (concluding that Glendora's complaint did not state a claim that entitled her to relief); *Glendora v. Nickerson*, 225 F.3d 648 (3d Cir. 2000) ( "Appeal Dismissed."). *In re Glendora*, 1999 WL 60093(D.C.Cir. 1999) (denying petition for writ of mandamus, concluding that the district court was correct in determining that venue did not lie); *Glendora v. Rehnquist*, 194 F.3d 173, 1999 WL 334512 (D.C.Cir. 1999) (affirming dismissal of action finding the issues presented no occasion for an opinion); *Glendora v. Board of Dirs.*, 152 F.3d 918, 1998 WL 386023 (2d Cir. 1998)(affirming dismissal of complaint for lack of subject matter jurisdiction).

 Glendora has even crossed the United  States Supreme Court, *Glendora v. Porzio*, 523 U.S. 206 (1998) (denying Glendora leave to proceed in forma pauperis, and, in the wake of fourteen petitions between 1994 and 1998, entering an order barring prospective in forma pauperis filings by Glendora in non-criminal cases).

**Report and Recommendation - Page 3**

against Tomann fill Volume One of her Complaint, comprising a total of 49 pages.  Glendora also names Defendants Debra Ecock, Kristine Savarino, Cecelia Mastrorilli, Robert Callagy, and Satterlee Stephens Burke & Burke LLP as "accessories before and after the fact." (Complaint, Volume One, p. 16.)

Glendora identifies the next set of defendants as "The Torres defendants," who include Chief Judge Ernest C. Torres, David A. DiMarzio, Clerk and Francis McCabe, former intake Clerk, United States District Court, District of Rhode Island (collectively the "Torres Defendants"), and who appear in the section entitled "Beta."  Glendora sues "The Torres defendants" for the "bizarre and grotesque violation of [her] civil rights."  (Complaint, Volume One, p, 17.)  Glendora alleges she sent complaints and filing fees to the District of Rhode Island for filing, but the District of Rhode Island returned the complaints, stating Glendora had failed to pay the filing fees.  Glendora further alleges that when she attempted to contact the Court to remedy the situation, Mr. McCabe hung up on her, Mr. DiMarzio was not working, and the individual she spoke to at the court would not connect her to Judge Torres.  Glendora accuses the named Defendants for deliberately losing her filing fee, and for this, she alleges these Defendants violated 42 U.S.C. § § 1983 and 1985; 18 U.S.C. § § 2, 241, 371, 401(2) and 1001; 47 U.S.C. § § 521 *et seq.*; and 9 NYCRR 595.4.

The third set of Defendants appear fall under the section entitled "gamma" and includes Senior Judge Thomas A. McAvoy, United States District Court, Northern District of New York. and his "amanuensis."  (Complaint, Volume 2, p. 21.)  Glendora again uses this Complaint to collaterally attack a prior judicial decision issued by Judge McAvoy in *Huston v. Time Warner Entertainment*, 03-CV-0633, United States District Court, Northern District of New York,

alleging the decision violated her public access rights under 47 U.S.C. § § 521 *et seq.*, 14 NYCRR 595.4; and New York Public Service Law § 229.  Glendora's main problems with respect to Judge McAvoy's decision in the above-reference matter seems to be his citation of the unpublished decision, *Glendora v. Malone*, 101 F.3d 1393, 1997 WL 678982, at *1, in which Glendora was a party.  Glendora apparently believes Judge McAvoy missed the "gravamen" of *Malone*.  (Complaint, Vol. 2, p. 23.)

Defendants number four named in the section entitled "delta" are Judges Sonia Sotomayor, Reena Raggi and Peter W. Hall, United States Court of Appeals, Second Circuit.  Glendora names Judge McAvoy in this section as well.  Glendora alleges Judges Sotomayor, Raggi, and Hall violated 18 U.S.C. § 241, 371, 401(2) and 1001, 47 U.S.C. § § 521 *et seq.*, 9 NYCRR 595.4, and committed fraud apparently based on their affirmance of Judge McAvoy's decision in *Huston v. Time Warner Entertainment*.  *See Huston v. Time Warner Entertainment*, 127 Fed.App. 528  (2d Cir. 2005)(unpublished).  In this section, Glendora also alleges Judge McAvoy violated 18 U.S.C. § § 242, 371, 401(2) and 1001, and committed fraud.

Following Defendants number four are Defendants number five appearing in the section entitled "epsilon," which include Defendants Rivkin Radler LLP and William M. Savino (collectively "the Rivkin Defendants").  Rivkin Radler is a large law firm with its principal place of business on Long Island, New York and Savino, an attorney, is its Executive Partner.  Glendora's relationship with the Rivkin Defendants is also very attenuated.  The Rivkin Defendants acted as counsel in New York for the cable television provider CSC Holdings Corporation (a/k/a "Cablevision") in an action challenging Cablevision's new "lottery system" used to allocate cable access time to users brought by someone other than Glendora.  *See*

**Report and Recommendation - Page 5**

*Morrone v. CSC Holding Corp.*  363 F.Supp.2d 552 (J. Spatt, E.D.N.Y., April 4, 2005) and

*Morrone v. CSC Holding Corp.*, 2005 U.S.Dist. LEXIS 34638 (J. Spatt, E.D.N.Y., December 21,

2005).  In relation to this case, Glendora alleges that the Rivkin Defendants "lied that

Cablevision was not operating a lottery" and that the Rivkin Defendants "are Cablevision's liar

for hire." (Complaint, Volume 2, p. 35.)   For these actions, Glendora alleges the Rivkin

Defendants violated 18 U.S.C § 241;18 U.S.C. § 371; 18 U.S.C. § 401(2); 18 U.S.C. § 1001; and

committed fraud.

      Next in line, appearing under the heading "zeta," are the Defendants Glendora identifies

as the "Flynn Defendants."  From what the Court can discern from the Docket and the

Complaint, the Flynn Defendants are William M. Flynn, Leonard A. Weiss, James D. Bennett,

Thomas J. Dunleavy, Neal N. Galvin, Chad Hume, Thomas Isabella, Steven Shaye, John

Figgliozzi, Ann Dawson, and The New York State Public Service Commission.  The Flynn

Defendants have not filed any response to Glendora's Complaint against them.  Glendora alleges

the Flynn Defendants through the New York State Public Service Commission violated her

public access rights under 47 U.S.C. § 521, *et seq.*, NYCRR 595.4 by eliminating "the NYS

Cable TV Commission to take care of us public access producers."  (Complaint, Vol. 2,  p. 40.)

Glendora also maintains these Defendants are allowing the aforementioned Cablevision to run a

lottery for time slots.  Glendora further objects to her program being moved from 10:00 pm on

Fridays to 4:00 pm, thereby reducing her audience "by 4/5." *Id.*  Based on these allegations,

Glendora has filed claims against the Flynn Defendants under 42 U.S.C. § 1983 and 1985, and

18 U.S.C. § 1001 for "lying, covering up, misrepresenting." *Id.* at 42.

In somewhat related allegations, Glendora has filed claims against Dianne Bennett and Alyssa Amato (improperly named as "Alisa Amato."), who the Court assumes are employees of Cablevision, for reducing Glendora's audience by 4/5 by moving her program from 10:00 p.m. on Fridays to 4:00 p.m.  Glendora claims this violated 47 U.S.C. § 531(e) and 9 NYCRR 595.4.

Moving on to Volume Three of Glendora's Complaint, Glendora alleges in the section entitled "theta," that:

> Jane and John Does together with their abettors, accomplices and accessories who in complicity and common guilt stole from Glendora a blue sky.  Glendora has a right to a blue sky.  All of the above-mentioned persons are liable to her for putting ethylene dibromide, barum and other poisons in the fuel of the jet airplanes and exuding this aerosol over the atmosphere.  These chem trails cause puffy clouds that linger for hours....Sometimes this poison exuded from these abhorant [sic] jets cause striations.  These spread out and join one another contiguously until the azure blue is murdered by an abominal [sic] haze stealing from us our sunshine.  Glendora has this on videotape.  The saddest footage she has is a sunset of a matrix of chem trails.  Instead of a felicific rose sunset over whole puffs of God-clouds, we have pink poison like tic tac toe of chem trails.

(Complaint Volume 3, p. 45-6.)  Glendora also alleges the Environmental Protection Agency ("EPA") allows this to occur and lies to the public about whether this is actually occurring.  Glendora alleges the EPA violated 18 U.S.C. § 1001.

The next set of Defendants appearing under the heading "iota," include the State of New York, the Supreme Court, State of New York, the Appellate Division Supreme Court, State of New York, and the Court of Appeals, State of New York (collectively the "New York State Judiciary Defendants").  Glendora alleges these Defendants violated the public's right to have cameras in the court courtroom and committed fraud.

Defendants number ten are all members of the New York State Commission of Judicial Conduct (collectively "the Commission Defendants") and Glendora asserts they violated of 42

U.S.C. § § 1983 and 1985.  In sum, Glendora filed this claim against the Commission

Defendants for abdicating their duty to protect her from "bad judges." (Complaint, Volume 3, p.

59.)

In the section of the Complaint entitled "lambda," Glendora alleges Chief Judge Michael

Boudin, United States Court of Appeals, First Circuit improperly referred to her as an

"incarcerated litigant" in an order dismissing a complaint of judicial misconduct brought under

28 U.S.C. § § 1984 and 1985, and also committed fraud and libel.

Judge Mary M. Lisi and Magistrate Judge Lincoln D. Almond, United States District

Court, District of Rhode Island, appearing in section "mu," are accused of ruling on a case filed

by Glendora without her permission in violation of U.S.C. § 636.  Specifically, Magistrate

Almond ruled on the case and Judge Lise allowed him to do so.  Glendora also alleges these

Defendants violated 18 U.S.C. § 1985, and committed fraud.

The next set of Defendants are James Reynolds, Mid-Hudson Cablevision, Mid-Hudson

Media, Rob Johnson, Laurie Pulver, Stuart Smith, and Mid-Hudson Mecha (collectively the

"Mid-Hudson Defendants").  Glendora has also filed claims against for violating Glendora's

public access rights.  Glendora claims that she has submitted her programs to Mid-Hudson

Cablevision, but these Defendants have failed to cablecast "A Chat With Glendora" and have

failed to return her tapes.  This final set of Defendants have not responded to Glendora's

Complaint.  They are all listed with a New York address.

In Glendora's final claim, she alleges Yenyfer Olaya, improperly named in Glendora's

Complaint as "Jennifer Olaya," cut "A Chat with Glendora" from two hours to one-half hour.

Glendora alleges Olaya violated 47 U.S.C. § 521; 19 NYCRR 595.4; and 47 U.S.C. § 521(e).

**Report and Recommendation - Page 8**

With respect to the relief sought, Glendora "demands $180,000,000.00 (one hundred eight million dollars) in compensatory and punitive damages, the costs of this action, that this court order defendants to cease and desist their law breaking as to these actions together with any further relief just and proper." (Complaint, Volume 3, p. 77.)

Glendora asserts that this Court has subject-matter jurisdiction because of federal question and/or diversity of citizenship. With the majority of Defendants, Glendora invokes the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § § 1961 *et seq.* as a basis for asserting jurisdiction "over defendants' criminal acts." (Complaint, Volume 1, p. 16). Glendora further asserts that venue is proper in Idaho because this is a civil rights action and "[a] civil rights action can be brought in any Federal court in the USA." (Complaint, Volume One, p. 6.) Glendora does not allege that any of Defendants reside in Idaho or have even a remote connection to Idaho.

## II.
## Glendora's Motions

The Court construes Glendora's various filings with the Court to essentially include the following motions:1) a Motion for Default Judgment against all Defendants; 2) a Motion for Sanctions; and 3) a Motion for Judgment on the Pleadings.

### A. Motions for Default

Glendora has filed various motions ultimately contending all Defendants are in default for failure to appear. Glendora, however, has not established Defendants were served with a summons and a copy of the Complaint pursuant to Fed.R.Civ.P. 4. *See Brockmeyer v. May*, 383 F.3d 7978, 801(2004)("Once service is challenged, plaintiffs bear the burden of establishing that

service was valid under Rule 4.")  Although she swears under penalty of perjury that she served by Defendants by first class mail, she has not submitted any evidence that Defendants have returned the waiver of service.

Rule 4(d)(2), Fed. R. Civ. Pro., provides that a plaintiff may notify an individual or corporation of the commencement of the action and request that the defendant waive service of a summons.  This Rule sets forth the procedures to be followed, including dispatching the complaint, notice and request by first-class mail and allowing the defendant a reasonable time to return the waiver, which shall be at least 30 days from the date the request is sent.  A defendant who fails to comply with the request can be liable for costs associated with service subsequently incurred by a plaintiff.

If a waiver is not returned, the next step for service is described in Rule 4(e)(1), Fed. R. Civ. Pro., which allows for service either under the laws of the state in which the federal district court is located, or under the laws of the state where the defendant resides.  As discussed above, there is no indication in the record that any of the Defendants have returned a waiver of service and there is no further indication that Glendora has attempted to serve Defendants by other means.  Without proof of effective service, Glendora's motions for default must be denied (Docket Nos. 10, 13, and 32).

**B.  Motion for Sanctions**.

Glendora has not provided any factual or legal basis for the imposition of sanctions pursuant to Fed.R.Civ.P. 11.  The Court, therefore, denies Glendora's motions for sanctions (Docket Nos. 6 and 24).

### C. Motion for Judgment on the Pleadings

Glendora moves that "all of the relief stated in her Complaint be granted in its entirety." The Court construes this as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).  Glendora, however, has not provided a factual or legal basis to establish she is entitled to prevail on her claims as a matter of law. The Court, therefore, denies her Motion for Judgment on the Pleadings (Docket No. 32).

### III. Defendants' Motions to Dismiss

### A. Standard of Review

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Branch v. Tunnel*, 14 F.3d 449, 453 (9th Cir. 1993), *cert. denied*, 114 S.Ct. 2704 (1994).  Furthermore, if a Rule 12(b)(6) motion raises "matters outside the pleading" and these matters are "presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  *Id.* at 453.  In this instance, numerous affidavits have been filed in support or opposition to the motions to dismiss.  Therefore, the Court will treat Defendants' motions to dismiss as motions for summary judgment.

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (1993).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case."

*Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings."  *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.,* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability."  *Id.,* at 249-250.  "The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]."  *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment.  *Musick v. Burke,* 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe,* 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law.  *Aronsen v. Crown Zellerbach,* 662 F.2d 584 (1981).

**Report and Recommendation - Page 12**

**B. Discussion**

With the exception of the Flynn Defendants, the New York State Judiciary Defendants, and the Mid-Hudson Defendants, all the Defendants have filed various motions to dismiss. The Court will address these Defendants' motions to dismiss collectively as each of the Defendants who have responded to Glendora's Complaint seek dismissal on the grounds that this Court lacks personal jurisdiction. However, the Court will address Tomman's Motion to Dismiss separately as is seeking dismissal based on the judicial immunity doctrine.

As the plaintiff in this action, Glendora carries the burden of making a prima facie showing through her pleadings and affidavits that jurisdiction is appropriate. *See National Union Fire Ins. Col. v. Aerohawk Aviation, Inc.*, 259 F.Supp.2d 1096, 110 (U.S.D.C. Idaho 2003)(*citing Dole Foods Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)("Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate.") Glendora, in her Complaint, does not allege any of the named Defendants are citizens of the state of Idaho. Therefore, as non-residents, an analysis of personal jurisdiction has two components. First, there must be a statute that gives the court authority to exercise jurisdiction. *Data Disc*, 557 F.2d at 1286. If service is not authorized under a relevant federal statute, the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction. Fed.R.Civ.P. 4(e, f); *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1314 (9th Cir. 1985). Second, the exercise of jurisdiction must meet Constitutional standards. *Id*.

**1. Glendora may not assert jurisdiction under any applicable federal statute.**

As a preliminary matter, the Court will address Glendora's contention that jurisdiction and venue are appropriate as to various Defendants because this is a civil rights action and "[a] civil rights action can be brought in any Federal court in the USA."  This statement is simply incorrect.  The Ninth Circuit has held that a federal court may only assert personal jurisdiction over non-resident defendants in a civil rights action if the exercise of jurisdiction would otherwise comport with the State's long-arm statute. *See generally Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995)(holding that in a § 1983 action the exercise of jurisdiction must comport with the state long-arm statute).  Section § 1983 has not been interpreted as allowing nationwide service of process.  Thus, Glendora may not rely on the fact she has asserted civil rights violations in her Complaint as a proper basis for asserting jurisdiction.

In addition, Glendora attempts to invoke the national service of process provision of the RICO, 18 U.S.C. § 1965(b), as a basis for asserting jurisdiction.  This argument equally fails.  First, it should be noted that an in-depth reading of Glendora's Complaint, which it requires, indicates that Glendora has not alleged all Defendants have violated RICO.  Therefore, she may not invoke RICO's nationwide service of process provision as a basis for jurisdiction against those Defendants whom she has not asserted RICO claims.  Equally, Glendora may not invoke RICO's nationwide service of process provision as to those Defendants against whom she has attempted to assert RICO claims because she has failed to allege a multi-district conspiracy and has further failed to allege that this court would otherwise have personal jurisdiction over one of the participants in the alleged multi-district conspiracy.

RICO Section 1965(b) allows for service of process upon RICO defendants residing outside the federal court's district.  Yet, the scope of Section 1965(b) is not without limits.  *See Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir.1986).  The nationwide service of process authorized by the RICO statute is conditional, and provides that such process is available if it is shown that "the ends of justice" require that persons outside the district be brought before the court.  18 U.S.C. § 1965(b); *Butchers Union*, 788 F.2d at 539.  In *Butcher's Union*, the court stated that:

> As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b ), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators

*Id*. Moreover, the court stated that merely naming persons in a RICO complaint does not subject those persons to the nationwide service provisions of Section 1965(b). *Id.*

In this case, many of Glendora's allegations are hardly discernable, and those that are do not allege a multi-district conspiracy by any of the named Defendants.  Glendora's Complaint is an amalgamation of claims concerning various unrelated events or incidents.  For example, Glendora's claim that John and Jane Doe Defendants stole her blue sky has no bearing on her claim against the Rivkin Defendants, who she alleges are Cablevision's "liars for hire." Furthermore, as discussed below, Glendora has failed to show that this Court would have jurisdiction over even one of the participants in the alleged multi-district conspiracy.  For these reasons, the Court may not rely upon Section 1965(b) as a basis for exercising jurisdiction over Defendants.  Accordingly, jurisdiction in this case is only be proper if Idaho courts could otherwise assert jurisdiction over Defendants.

Glendora, however, fails to meet her burden that jurisdiction is appropriate as to any of the responding Defendants under either Idaho's long arm statute or that the exercise of jurisdiction comports with due process.

**2. Idaho's Long-Arm Statute does not authorize jurisdiction over Defendants**.

This court, sitting in diversity, is bound to follow the Idaho Supreme Court's interpretation of Idaho state law. *State of Idaho v. M.A. Hanna Co.*, 819 F.Supp. 1464 (D.Idaho 1993).  Idaho Code § 5-514, Idaho's long-arm statute, confers jurisdiction in Idaho for non-residents who either: (a) transact any business in Idaho;(b) commit a tortious act within Idaho;(c) own or use real property in Idaho;(d) contract to insure any person or risk in Idaho; (e) maintain a matrimonial domicile in Idaho; or (f) engage in acts in Idaho giving rise to a paternity action.

A review of the record, including the affidavits submitted by the various Defendants in support of their motions to dismiss, indicates that the allegations as to each defendant or group of defendants, although disparate in most respects, share the one overriding commonality that none of them bears any connection to the state of Idaho.  Glendora does not allege any Defendant transacted business in Idaho, committed a tortious act in Idaho, owns or uses real property in Idaho either in the present or the past, contracted to insure any person or risk in Idaho, maintained a matrimonial domicile in Idaho, or engaged in acts in Idaho giving rise to a paternity action.  Given Glendora's complete and utter failure to allege any connection of Defendants to the state of Idaho, this Court may not assert long-arm jurisdiction over Defendants.

**3. Jurisdiction over Defendants would not comport with the principles of due process**.

Even assuming the Court Defendants fell within the scope of Idaho's long-arm statute, the exercise of jurisdiction would not meet constitutional muster.  The Court has personal

jurisdiction over these Defendants only to the extent permissible by the United States

Constitution.  A state may constitutionally exercise personal jurisdiction over nonresidents who

have "sufficient minimum contacts" with the forum such that "maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice." *International Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945).  On one end of the jurisdictional spectrum, a defendant

may be subject to "general in personam jurisdiction"– meaning the court may exercise

jurisdiction over the defendant for all claims – if  his or her instate contacts are "systematic and

continuous." *Helicopeteros Nacionales de Colombia v. Hall,* 466 U.S. 408 (1984).  On the other

end of the jurisdictional spectrum, if the contacts are not substantial enough to warrant general

jurisdiction, a court's jurisdiction will be limited to claims related to the defendant's in-state

activities. *Id.*

It is clear that the Court may not exercise general jurisdiction over the above-named

Defendants.  It is undisputed that none of these Defendants are citizens of the state of Idaho, and

Glendora otherwise failed to make a prima facie showing that any of these Defendants have had

contacts with the state of Idaho that could be appropriately characterized as "systematic and

continuous."  Thus, the Court may not exercise general jurisdiction over the Defendants

referenced above.

Nor may the Court exercise specific jurisdiction over these same Defendants.  The Ninth

Circuit applies a three-part test to evaluate the nature and quality of defendants' contacts for

purposes of specific jurisdiction:

> 1) defendant must take some action whereby he or she purposefully avails himself or
> herself of the privilege of conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum-related activities.

3) the exercise of jurisdiction must be reasonable.

*Brand v. Menlove Dodge*, 796 F.2d 1070, 1072 (9th Cir. 1986).  Glendora has failed to show that the Defendants have purposefully availed themselves of the privilege of conducting activities in Idaho.  Nor do any of the claims arise out of the Defendants' forum related activities.  Thus, the exercise of specific jurisdiction would not be reasonable.

Furthermore, Glendora's argument that summary judgment in general violates due process is simply wrong.  Such statements will not save Glendora's Complaint from dismissal.

### 4.  The Court lacks jurisdiction over the EPA.

Rule 4(i)(2)(A) of the Federal Rules of Civil Procedure provides in pertinent part:

[s]ervice on an agency...of the United States...is effected by serving the United States in the manner prescribed by Rule 4(i)(l) and by also sending a copy of the summons and complaint by registered or certified mail to the...agency.

Rule 4(i)(l) further provides that service is effected by serving the United States Attorney is effected by serving the United States Attorney in accordance with the requirements of Rule 4(i)(l)(A), and by serving the Attorney General of the United States in accordance with the requirements of Rule 4(i)(l)(B).

Glendora has failed to allege or present evidence that she has complied with the above requirements.  Therefore, service of process was insufficient and absent proper service of process, the Court may not exercise jurisdiction over the EPA.[3]  *See Omni Capitol International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

---

[3] Even assuming Glendora has properly effectuated service on the EPA, the Court could find no basis in law to support her claim against the EPA for its purported failure to prevent others from stealing her blue sky in the manner described in her Complaint.

**Report and Recommendation - Page 18**

**C. Defendant Tomann's Motion to Dismiss**

Defendant Stephen G. Tommann argues that the doctrine of absolute judicial immunity mandates summary judgment in his favor.  The Court agrees.

As Glendora knows but does not appear to care in that it does not deter her from suing various judges, judge are absolutely immune from suit for judicial acts performed in their official capacities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991)("judicial immunity is immunity from suit, not just from the ultimate assessment of damages").  A plaintiff may not overcome judicial immunity by alleging bad faith or malice.  *Mireles*, 502 U.S. at 11-13.  Nor will a judge "'be deprived of immunity because the action he took was in error...or in excess of his authority.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  Because the only wrongdoing Glendora has alleged against Judge Tomann relates to acts performed in his judicial capacity, judicial immunity precludes any claims against him and such claims must be dismissed.  As evidenced by court documents included in her own Complaint, Glendora has been advised on numerous occasions that judges have absolute immunity.  The fact Glendora has filed her Complaint in a district across the country does not allow her to circumvent this long-standing judicial rule.

**D. Remaining Defendants**

As to the Flynn Defendants, the Mid-Hudson Defendants, and the New York State Judiciary Defendants, who have not responded to Glendora's Complaint, the Court can find no basis for assert jurisdiction based on the face of Glendora's pleadings.  Nor is there any evidence that these Defendants have been properly served.  However, a court may not dismiss an action sua sponte for lack of jurisdiction or improper venue absent

extraordinary circumstances.  Fed.R.Civ.Pro. 12(b), (h)(1); *see also Buchanan v. Manley*, 145 F.3d 386 (D.C.Cir. 1998)(*citing Anger v. Revco Drug Co.,* 791 F.2d 956 (D.C.Cir. 1986)); *Stich v. Rehnquist*, 982 F.2d 88 (2d Cir. 1992).  Therefore, the Court directs Glendora to submit evidence that the remaining Defendants were served with a summons and a copy of the Complaint pursuant to Fed.R.Civ.P. 4.  Furthermore, the Court issues an order to Glendora to show cause why the remaining Defendants should not be dismissed for lack of personal jurisdiction, improper venue, or failure to state a claim. Once in receipt of Glendora's response, the Court will evaluate whether Glendora's Complaint should be dismissed as to the remaining Defendants or whether its should proceed on the merits.

## III.
## Conclusion

The Court recommends that all claims against all Defendants, with the exception of the Flynn Defendants, the New York State Judiciary Defendants, and the Mid-Hudson Cablevision Defendants, be dismissed.

Glendora will have *(10) ten days* to submit an pleading to show cause why her claims against the remaining Defendants should not be dismissed for lack of personal jurisdiction, improper venue, or failure to state a claim upon which relief may be granted. If Glendora fails to overcome the apparent infirmities in her Complaint, this Court will recommend the dismissal of Glendora's action in its entirety.

## <u>RECOMMENDATION</u>

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

1) Motion for Summary Judgment (Docket No. 4), filed on January 4, 2006 by Stephen G. Tomann, BE GRANTED;

2) Motion and Affirmation in Support for $23,000 Sanctions (Docket No. 6), filed on January 12, 2006 by Glendora, BE DENIED;

3) Motion and Affirmation in Support for Default Judgment in Her Favor Pursuant to FRCP Rule 55 Upon All Defendants  Excepting Tomann, Sotomayor, Raggi, and Hall (Docket No. 10), filed on January 27, 2006 by Glendora, BE DENIED;

4) Omnibus Memoranda by Glendora Together with Motion for Summary Default Judgment (Docket No. 13), filed on February 2, 2006 by Glendora, BE DENIED;

5) Cross-Motion to Dismiss (Docket No. 17), filed on February 21, 2006 by Rivkin Radler LLP and William Savino, BE GRANTED;

6) Cross-Motion to Dismiss (Docket No. 19), filed on February 21, 2006 by Alyssa Amato, Yenyfer Olaya, Dianne Bennett, Robert M. Callagy, Satterlee Stephens, Burke & Burke, Kristine Savarino, and Cecelia Mastrorilli, BE GRANTED;

7) Motion for Sanctions filed on March 7, 2006 by Glendora (Docket No. 24), BE DENIED.

8) Federal Defendants' Motion to Dimiss (Docket No. 26), filed on March 20, 2006, BE GRANTED;

9) Motion to Deny Motions to Dismiss and to Grant All the Relief in Her

Complaint and to Award Her Judgment by Default against All Defendants (Docket No.

32), filed on April 10, 2006, BE DENIED; and

10) Cross-Motion to Dismiss (Docket No. 37), filed on May 5, 2005 by Debra

Ecock, BE GRANTED.

DATED: May 26, 2006

Honorable Mikel H. Williams
United States Magistrate Judge